**FILED**

NOV 13 2015
11-13-15
JUDGE ANDREA WOOD
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 110-1 |
| v. | Judge Andrea R. Wood |
| BRANKO BOGDANOV | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant BRANKO BOGDANOV, and his attorney, SHELDON SOROSKY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with conspiring to transport stolen goods in interstate commerce, in violation of Title 18, United States Code, Section 371 (Count 1), and transportation of stolen goods in interstate commerce, in violation of Title 18, United States Code, Section 2314 (Count 2).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charges to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with conspiring to transport stolen goods in interstate commerce, in violation of Title 18, United States Code, Section 371; and Count Two, which charges defendant with transportation of stolen goods in interstate commerce, in violation of Title 18, United States Code, Section 2314. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## **Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than January 1, 2004, and continuing through on or about March 4, 2014, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere, BRANKO BOGDANOV conspired and agreed with MACA MOA, JULIA BOGDANOV, and others to transport in interstate commerce, goods, wares, and merchandise, of a value of $5,000 or more, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2314.

On or about February 21, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, BRANKO BOGDANOV transported in interstate commerce, goods, wares, and merchandise, of a value of $5,000 or more, knowing the same to have been stolen, in violation of Title 18, United States Code, Sections 2314 and 2.

Specifically, BRANKO BOGDANOV and MACA MOA travelled throughout the United States and stole merchandise from retail stores that were not located in Illinois. MACA MOA entered retail stores wearing a blue lining underneath a long black skirt, hid stolen goods within the lining underneath her skirt, and exited retail stores without paying for the items she hid underneath her skirt. BRANKO BOGDANOV removed security devices from goods in retail stores, so that defendant MACA MOA could steal the items without alerting store security.

JULIA BOGDANOV accompanied defendants BRANKO BOGDANOV and MACA MOA when they stole merchandise from retail stores, and interfered with employees of the stores when they attempted to question or detain defendants BRANKO BOGDANOV and MACA MOA.

BRANKO BOGDANOV sold goods to Individual A, which Individual A sold using his/her eBay account. JULIA BOGDANOV and others sold stolen goods on eBay that defendants BRANKO BOGDANOV and MACA MOA had stolen from retail stores outside of Illinois and transported to their home in Northbrook, Illinois.

3

On or about February 19, 2014, defendants BRANKO BOGDANOV, MACA MOA, and JULIA BOGDANOV stole two boxes of Lego building blocks from a Toys R Us store located in Houston, Texas.

On or about February 20, 2014, defendants BRANKO BOGDANOV, MACA MOA, and JULIA BOGDANOV stole two boxes of Lego building blocks from a Toys R Us store located in Baton Rouge, Louisiana.

On or about February 20, 2014, defendants BRANKO BOGDANOV, MACA MOA, and JULIA BOGDANOV stole two boxes of Lego building blocks, one InnoTab child learning tablet, and six baby monitors from a Toys R Us store located in Metairie, Louisiana.

On or about February 21, 2014, defendants BRANKO BOGDANOV, MACA MOA, and JULIA BOGDANOV returned to their home in Northbrook, Illinois, with items they had stolen from retail stores in other states, and stored the items in their home. The items included 25 VTech Innotab child learning tablets, 8 Magformers building toy sets, two Lego Architecture Farnsworth sets, 1 Lego Mindstorm set, three Baby Bjorns, two Lego Robie House sets, one MobiGo child touch learning system, 100 pieces of various Mikasa silverware, and 25 bags of Starbucks coffee. The value of stolen items transported into and out of the Northern District of Illinois exceeded $5,000.

4

7.     Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3:

During 2003, BRANKO BOGDANOV worked together with MACA MOA, JULIA BOGDANOV, and others to steal merchandise from retail stores that were not located in Illinois, and resold that merchandise in interstate commerce to Individual A and others.

### Maximum Statutory Penalties

9.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 5 years' imprisonment.  Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.     Count Two carries a maximum sentence of 10 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

c.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 15 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

10.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

6

Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

   b.  **Offense Level Calculations**.

     i.  The base offense level is 6, pursuant to Guideline §§ 2B1.1(a)(2) and 2X1.1.

     ii.  It is the government's position that, pursuant to Guideline § 2B1.1(b)(1)(K), the offense level is increased by 18 levels because the loss exceeded $3,500,000 but did not exceed $9,500,000. It is the defendant's position that, pursuant to Guideline § 2B1.1(b)(1)(C), the offense level is increased by 4 levels because the loss exceeded $15,000 but did not exceed $40,000.

     iii.  It is the government's position that, pursuant to Guideline § 2B1.1(b)(2)(A), the offense level is increased by 2 levels because the offense involved 10 or more victims. It is defendant's position that this enhancement does not apply.

     iv.  It is the government's position that, pursuant to Guideline § 2B1.1(b)(4), the offense level is increased by 2 levels because the offense involved receiving stolen property, and the defendant was a person in the business of selling stolen property. It is defendant's position that this enhancement does not apply.

     v.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 3 and defendant's criminal history category is II:

i.     On or about December 14, 1977, defendant was convicted of Burglary of Building in the 52nd Judicial District Court in Copperas Cove, Texas, and sentenced to four years' probation.  Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this conviction.

8

ii.    On or about June 21, 1979, defendant was convicted of Possession of Stolen Property in the Johnson City Village Court in Johnson City, New York, and sentenced to four years' probation. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this conviction.

iii.    On or about June 1, 1982, defendant was convicted of Possession of Stolen Property in the Union County Circuit Court in La Grande, Oregon, and sentenced to 90 days' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this conviction.

iv.    On or about June 18, 1990, defendant was convicted of Theft by Taking in the Brantley County Superior Court in Nahunta, Georgia, and sentenced to 12 months' imprisonment. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this conviction.

v.    On or about August 24, 1992, defendant was convicted of Felony Theft in the Eighth Judicial District in Fort Collins, Colorado, and sentenced to 7 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government takes the position that defendant's offense level is 25, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 63 to 78 months' imprisonment, in addition to any

supervised release, fine, and restitution the Court may impose. Defendant takes the position that defendant's offense level is 8, which, when combined with the anticipated criminal history category of II, results in a preliminary advisory Sentencing Guidelines range of 4 to 10 months' imprisonment.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

12. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement

regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

13.     Each party is free to recommend whatever sentence it deems appropriate.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the

United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Forfeiture

19.    The indictment charges that defendant is liable to the United States for any and all right, title, and interests he has in any property, real and personal, which constitutes and is derived from proceeds traceable to the violations alleged in Counts One and Two.  Defendant acknowledges that 2900 Weller Lane, Northbrook, IL, 60062, is subject to forfeiture because it is derived from proceeds traceable to the violations alleged in Counts One and Two.  By entry of a guilty plea to Counts One and Two of the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

20.    Defendant agrees to the entry of a forfeiture judgment against the property identified above, in that property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture

12

relinquishing any right of ownerships he has in the above-described property and further agrees to the seizure of this property so that this property may be disposed of according to law.

21.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 110-1.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States

13

Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

24. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

25. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

        b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    26.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights

### Presentence Investigation Report/Post-Sentence Supervision

    27.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him,

16

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS

17

to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

30.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.    Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

a.    Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

b.    Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to

18

the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

32.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead

guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

33.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: __11/13/15__

_____
ZACHARY T. FARDON
United States Attorney

_____
RENATO MARIOTTI
Assistant U.S. Attorney

_____
BRANKO BOGDANOV
Defendant

_____
SHELDON SOROSKY
Attorney for Defendant

21